The opinion of the Court was afterward drawn up by
Parker C. J.
This case comes before the Court by appeal from the board of visitors of the Theological Institution at Andover, who, on the 14th of October, 1828, confirmed the sentence of the trustees of the institution, removing the appellant from his office of professor of ecclesiastical history.
The authority of this Court to sustain this appeal is given by St. 1823, c. 50, and must be limited to the cases therein specified; for its general jurisdiction, as established by the legislature by St. 1782, c. 9, would not extend to this case in the form now presented, though by the terms of that statute and the preceding one of 1780, c. 17,[1] whatever power was exercised, by the highest tribmial of common law jurisdiction in England, or in the province of Massachusetts Bay, before the adoption of the constitution of the State, was vested in the Supreme Judicial Court of the Commonwealth ; which might, according to the principles of the common law, and the provisions of our statutes, correct all errors of law happening in the proceedings of all inferior tribunals, but in the exercise of this power would, in regard to process, necessarily conform to the express provisions of the statute, or to the practice of the courts of common law *326 in England, under the general authority given in the statute Writs of error, prohibition, certiorari and mandamus, are the processes known at the common law and recognised in the statute. An appeal, in the sense of the term as gen erally used in our statutes, which is a re-hearing, of the whole cause, matter of fact as well as law, after it has been decided by a court of competent jurisdiction, is an anomaly arising from analogy to civil law and admiralty proceedings, and therefore does not exist in a court of common law jurisdiction, unless expressly given by statute. Still the word is so naturalized in our State jurisprudence, and in the common proceedings under the appellate power is so familiar in practice, that a legislative act giving an appeal generally from any special or inferior tribunal to the Supreme Judicial Court, would undoubtedly be construed to give an authority to re-hear the whole cause upon its merits in regard to the facts as well as the law; but when the statute which grants the appellate power, limits the operation of it to specific subjects, this Court has no power to transgress the limits assigned by the statute.
Upon the first question therefore presented by the counsel for the appellant, we are all of opinion that we are restricted by the statute under which we act, to the consideration of two particular subjects arising out of the proceedings of the board of visitors.
1. Whether they have acted contrary to the statutes of the founders of the institution.
2. Whether they have exceeded the limits of their jurisdiction.
By a proviso to the 3d section of St. 1823, c. 50, all the power which the Court has by virtue of the common law, or the general statutes of the Commonwealth, is continued and preserved in full force; so that considering the authority before existing to correct and reverse the decrees and proceedings of all inferior tribunals and jurisdictions, by the various judicial writs which have been mentioned, or by action in favor of any party who may be injured by their doings, perhaps the form in which relief is to be administered under this statute constitutes the chief difference between the authority of this *327 Court as it now exists, and as it existed before the enacting of the statute. Under either of the antecedent forms, we think it would not be competent to the Court to correct any supposed error of judgment of the board of visitors, on evidence touching any case decided by them on which it was clearly within their jurisdiction to act, and in acting upon which they had not violated any of the statutes of the founders ; for by the common law, the visitors of a corporation. appointed by the founders, are supposed to have committed to them the sole and exclusive right of judging upon such matters without any review or appeal, and it would be violating the rights of the founder, as expressed in the instrument by which he creates the trust, to substitute any other tribunal in their stead.
The doctrine upon this subject is most clearly and satisfactorily explained by Lord C. J. Holt, in the celebrated case of Philips v. Bury, reported in 1 Ld. Raym. 5, but more at large from the manuscript of Lord Holt, published in 2 T. R. 346.
Thé doctrine thus laid down was sanctioned by the House of Lords, and from that time has been received and acted upon as undisputed law in England, and without doubt is the common law of this land so far as it has not been altered by the statute before cited. Chancellor Kent, in his valuable Commentaries, vol. 2, p. 240, [3d ed. 300, et seq.J, “ Of the Visitation of Corporations,” considers the common law of England in regard to this subject, as the law of this country, and it undoubtedly is, with the exception before mentioned; and such appears to have been the opinion of the Supreme Court of the United States in the Dartmouth College Case, 4 Wheat. 518.
By that law the visitor of all eleemosynary corporations is the founder or his heirs, unless he has given the power of visitation to some other person or body, which is generally the case ; and to the visitor thus constituted belongs the right and power of inspecting the affairs of the corporation and superintending all officers who have the management of them, according to such regulations and restrictions as are prescribed by the founder in the statutes which he ordains, without any control or revision of any other person or body, *328 except the judicial tribunals by whose authority and jurisdiction they may be restrained and kept within the limits of their granted powers, and made to regard the constitution and ■ general laws of the land.
It was with a view to this power of the Supreme Judicial Court, probably, that the founders of the two institutions which are now united, provided in their constitutions for an appeal to this Court from the decisions of the visitors, and that the legislature sanctioned these provisions by the statute under which we are acting. By appeal, the final question of the validity of the doings of the board of visitors can be sooner determined, and at less expense, than on mandamus or other process of the common law. Besides which, it was probably thought more fit and proper that a decree for removal from office should be held in suspense until the ultimate decision should be had, than that a vacancy should instantly take place upon the decision of the initiatory forum, the trustees, or even of the board of visitors, so that a restoration should become necessary perhaps after the place had been filled by another person. But it cannot be inferred from the use of the term appeal, accompanied as it is by the restrictive words, by the founders in their constitution and by the legislature in the statute, that this Court is to try the whole merits of a case, and overrule the judgment of the visitors in a matter clearly within their cognizance, for this would be to make this Court the general visitors of the corporation, instead of the visitors themselves appointed by the founder, against all the principles which relate to and regulate these eleemosynary establishments.
The founders themselves appear to have well understood, probably having acted under sound legal advice, the difference in effect between a general and a limited appeal; that under the former, as given to the visitors from the decisions of the trustees, there was to be a full revision and investigation of the whole matter of evidence as well as law ; that under the latter, as given to the Court, the inquiry was to be confined to the legal questions of jurisdiction and conformity to statutes. This distinction is well established in the 10th article of the additional statutes for the theological seminary compared with *329 the 12th, and with the 20th of the Associate Theological Institution.
By these different provisions the trustees are invested with authority, in the first instance, to supervise the concerns of the institutions, and the conduct of the professors and students, and to this body is given the power to remove such of the former as may be exposed to the penalties established by the statutes of the founders. So that this body has visitatorial powers to the extent given to them by these statutes. A general appellate power is given to the body denominated the board of visitors, who have also original authority concurrent with that of the trustees as to most of the subjects committed to their charge. When sitting under their appellate jurisdiction, they are required to revise the doings of the first board, and may affirm or annul them at their pleasure, inquiring into all the facts and hearing all the evidence which may appertain to any question so brought before them.
From that body lies the appeal to this Court, but in a specific and limited degree, as expressed in the act of the legislature ; for should the appellate power granted in the constitution or statutes of the founders admit of a construction more extensive than the duty which is imposed by the legislature, the Court would be restricted by the latter, as it cannot take jurisdiction from any other authority than the law of the land.
It is thus manifest that we cannot go into a hearing de novo of the allegations and defence, or of the evidence adduced in support of either, but are only to inquire, in the words of the statute, whether the visitors have exceeded the limits of their jurisdiction, or have acted contrary to the statutes of the founder ; which perhaps is the same thing in another form of expression, because if they violate the statutes, they act beyond the limits of their jurisdiction.
And the subject-matter of the complaint entertained and decided by the visitors, was clearly within the limits of their jurisdiction, if the charges made against the professor were such as by the statutes are made the cause of removal from office, because the adjudication on such complaint belongs to the visitors upon the appeal from the trustees, by the express terms of the statute. Now the causes which justify, and even re *330 quire a removal, are scandalous immorality, mental incapaci- ^ gross negligence, or any other just and sufficient cause. Whether under this latter designation, in such general terms, it was intended to give authority to deprive a professor on account of any defect of character or manners, which, though not amounting to immorality or negligence of duty, might nevertheless impair the usefulness and success of the institution, such as proneness to jealousy, discontent or querulousness of temper, need not be determined by us ; for one of the ostensible grounds of removal, by the visitors at least, was gross negligence of duty; and they profess themselves, in their adjudication, to have been fully satisfied by the evidence, of the truth of this charge ; and whether that evidence was sufficient to produce such a result, was for them, and not for us, to determine. There is nothing in the case before them, if rightly brought there, which shows that they exceeded the limits of their jurisdiction, or acted contrary to the statutes ; the statutes themselves requiring them to remove for the cause which they have found to exist.
But it is urged with considerable force, that these judges may have been prepossessed, prejudiced, or partial, owing to their connexion with the institution, and their natural leaning towards the trustees on any question between them and an accused officer, and therefore that this Court ought to re-hear the whole case, to prevent injustice from taking place.
The same objection may be made to the members of every tribunal; they'may be prejudiced and partial. The only security against this is the honor and dignity of the station, the solemnity of the trust, the selection of those who are to fill these high places. Confidence must be reposed somewhere. The laws place it in the tribunals of justice, and the founder of charitable institutions in those whom he appoints to superintend and visit them. It is possible that jurors may be partial or corrupt, but no one will say that, because of this possibility, tne facts of a cause should be tried by the court. If partiality or corruption be proved, the court has authority to annul their verdict; and so in this case, if it had been proved that the visitors had been partial or corrupt, they would have violated the spirit of the statutes by which they are required to a drain *331 jster justice impartially and exercise the functions of their office in the fear of God, according to the said statutes, the constitution of the seminary, and the laws of the land. See 20th article of the statutes of the Theological Institution.
But in order for this Court to judge whether there has been any such violation of the statutes, they should have before them the evidence on which the visitors acted, and not that which may be produced on a re-hearing, for this may be more or less than was given before the visitors ; and even the same witnesses, at another examination, may so vary their information as to make it impossible to ascertain whether the judgment of the visitors was sound or unsound, partial or upright, on the evidence before them. Therefore it follows, that if parties arraigned before the visitors shall intend to impeach their judgment on the ground of partiality or corruption, they must seasonably demand that the evidence be reduced to writing, that it may come up with the record, or perhaps by analogy to the proceedings in civil actions where it is intended to apply by writ of error to reverse a judgment, they should tender a bill of exceptions to any opinion or order of the board, and require that it be authenticated by the presiding member of the board, so that in case of rejection or admission of evidence contrary to law, or any other decision by which the accused may be aggrieved, this Court should have the means of detecting and reversing any erroneous opinion. And in this respect perhaps the authority of the Court under the statute, is broader than it would be at common law ; for without doubt, any such erroneous opinion would be contrary to the spirit of the statutes, which require that the visitors shall in their proceedings be governed by the laws of the land. In such cases so presented, if it should appear that there was an entire want of evidence to support the accusation, or a gross misapplication of it, partiality would be inferred, for it would be presumed that it was not owing to want of capacity in those who are intrusted with so high a duty. A palpable error in matter of law would be a ground of reversal, because contrary to the statutes, and a perversion of the evidence would require the same result, because it would show partiality in the trial; but merely on the ground, that in the opinion of this Court, *332 the visitors formed an incorrect judgment, we could not inter* fere- A due regard to the rights and Interests of those who are placed under the superintendence and control of judges constituted as are the visitors of charitable institutions, requires this degree of protection by courts of justice ; hut further than this the laws do not interfere with such bodies. Those who accept places of trust and profit in such institutions are presumed to know the tenure of their office, which, though during good behaviour, is nevertheless to be forfeited upon the honest judgment of the constituted tribunal, that they have ceased to behave well in the sense attributed to the term by the founders of the charity. And, therefore, though hard cases may arise, they are without redress, if those who pronounce the decree of deprivation, have a proper case to act upon, and act upon it with due regard to the statutes of their institution.
Confined therefore as we are to the record which is before us, we are to see whether in that there is any such material error as will warrant us in reversing the final decree.
Various errors have been pointed out and commented on elaborately, and with great learning and ingenuity, by the counsel for the appellant.
In regard to what occurred before the board of trustees generally, as to the form and manner of their proceedings, — their supposed prejudgment of the cause, having voted that it was expedient to remove, before a hearing or notice of the accusation was given,— refusing access to files and papers, —refusing to allow counsel, — the manner of procuring the confessions of the accused, which were used in evidence against him,— whatever irregularity there may have been in any or all of these particulars, we think it unnecessary to inquire, because the appeal entirely vacated the sentence of the trustees and brought the case before the visitors, whose duty it was to hear the whole case anew, without prejudice from the previous proceedings. Had the law allowed an appeal direct from the board of trustees, without the intermediate cognizance of the visitors, or without such appeal, could there have been an application for a mandamus, or an action at common law for the salary, which we think, on account of the right of appeal, there could not, the objections made to the proceedings before the *333 trustees would have required very serious consideration, and if sustained, would have been fatal to the result to which they came.
But the constitution of the founders is grounded upon the supposition, that irregularities may take place before, and even injustice be done by the trustees, who from their immediate connexion with the institution may not in every instance be the most impartial judges between themselves and any professor with whom a controvery may arise, they being necessarily, in pursuance of their duty as inspectors, accusers as well as judges ; and for this reason an appeal was given to a board more removed from local and other interests, and presumed to be under no influence but that of a strict regard to justice and the permanent interests of the institution. The opinion and sentence of the trustees ought not to have, and therefore must be presumed not to have had, any undue influence upon the minds of the appellate tribunal.
The analogy which this trial bears to the course of proceeding in our ordinary courts of justice on appeals, as established by statutes, is obvious and strong. Nearly all causes between party and party which are cognizable by the Supreme Judicial Court, come here by appeal from the Court of Common Pleas. They are tried without any reference to any antecedent trial. Whatever irregularities there may have been in the original forum, they do not impede the course of proceedings in this Court. If there were erroneous opinions and decis‘ons, or even if it could be made to appear that there was partiality or prejudice in the court or jury, or if a party should not be allowed a fair and full hearing, the remedy for all these defects is the appeal ; and the aggrieved party has the same standing in court and the same privileges as he would have had, if there had been no previous trial. It is so with the hoard of visitors. They are bound, on appeal, to hear the cause de novo and without any regard to antecedent steps, except that the cause shall be regularly brought before them.
If from the peculiar nature of these tribunals, there should be a weight attached to the known opinions of the original tribunal, that is a defect which cannot be cured, unless it be so palpable as to show partiality or pre-judication in the *334 board, or the members of it, to which the final jurisdiction "s given.
Was there any thing erroneous then in the proceedings of the visitors themselves ? For this is the point we are necessarily brought to, in the consideration of this subject.
First, it is alleged as a sufficient ground of reversal, that the board of visitors refused to conduct the trial with open doors, or to admit any persons within the room in which their sittings were held, but those who were engaged in the trial, and not even the witnesses, except one by one as they were examined. Whether this was discreet or not, we are not called upon to say, but only whether it was erroneous in point of law. No authority has been cited, nor have we found any which shows that these peculiar tribunals are obliged, under all circumstances, to administer their functions in the face of the public. We should be at a loss for authority in books, upon which to require even that courts of law should at all times and under all circumstances be under the necessity of admitting all the world. Our constitution and declaration of rights do not require it, though we think the usage of the country, and the vast importance of publicity of trials, would impress upon the mind of any judge the extreme impropriety, if not hazard, of shutting out spectators upon any occasion. Privacy in transactions of a public nature, and especially where the important interests, or the reputation of any citizen is involved, is with many, proof, with all, ground of suspicion, that the proceedings would not bear the fight. The visitors took upon themselves great responsibility in adopting this course, but, we are bound to suppose, had satisfactory reasons for it. At any rate, considering the presence and full hearing of able counsel, we cannot suppose any inju rious effect has happened to the appellant from this cause. We cannot for this reason annul the proceedings.*
Secondly, it is alleged that the articles of charge are not sufficiently definite and particular ; and this would be a material objection, if sustained by the record ; for we hold that by analogy to trials on criminal accusations in courts of justice, and the principles of the constitution, no man can be deprived *335 of his office, which is a valuable property, without having the offence with which he is charged, “ fully and plainly, substantially and formally described to him.” This enters so essentially into the justice of the case, and into the character of a fair trial, that it ought never to be dispensed with. Without it, the party charged does not know what to defend against; nor can another body, to which there may be an appeal, ascertain the applicability or the effect of the evidence
We do not however find the defect in the proceedings, on which this objection is supposed to rest. In the report of the committee of the board of trustees, which may be considered in the light of a complaint or indictment upon which the appellant was to be tried, there are four original charges which seem to be sufficiently specific, if in their nature they amount to a sufficient cause of removal. With respect to the three first, they are of so indistinct a character, that they hardly wear the appearance of offences, being the effect, if true, rather of constitutional infirmities of temper and disposition, than of perversity of mind or criminal intention.
1. Jealousies of the other members of the faculty, and want of confidence in his colleagues and in the trustees, may be consistent with upright views and with a faithful discharge of duty. Without doubt evils may grow out of such a state of mind tending to the material injury of the institution and the prostration of its government,” as the committee state in their report. But the possibility of such evils might not be a sufficient cause for removal, for advice and admonition might appease the feelings and remove the jealousies from which evils are only expected to flow. We should doubt whether this charge, unaccompanied by án allegation of actual existing mischief, would be a sufficient ground of removal, even within the authority supposed to be- given under the general terms of other just and sufficient cause.”
2. The second charge is, that there is a settled difference of opinion between Dr. Murdock and the trustees, in regard to the arrangement made in relation to his department.
If this matter rests only in opinion, it surely is not an of-fence for which he could be deprived of his living. If in consequence of such difference, the duties of his depart *336 ment should have been neglected, or he had refused to execute of the trustees in relation to it, the opinions might be evidence of the motives and objects of the omission, but of themselves could not sustain a decree of removal. Nor would the declarations of Dr. Murdock, that his professorship would be of no use while the arrangement of the trustees remained, be a specific ground of accusation, if he continued his functions and endeavoured to be as useful as circumstances would admit.
3. The third charge is of a similar character, and if it had been wholly made out to the satisfaction of the visitors, standing alone or in company with only the preceding charges, we apprehend the board would have thought that friendly and paternal advice, or at most, severe admonition, would have been preferable to the exercise of that final act of power which separates the accused from his associates and deprives him of his living.
4. The fourth original charge, however, is direct and unequivocal, and in the very words of the founders, as a cause for removal from office. It is gross neglect of duty ; and the facts and circumstances are stated which go to justify the charge. •
These facts and circumstances, if proved to the satisfaction of the visitors, and not excused or explained, amount to the offence charged and warrant their final decree. From the explanation given by Dr. Murdock in his written answer to this charge, others might be of opinion, were they sitting as judges of the facts, that if not an excuse, much extenuation appeared. But the evidence is not before us. We have not the authority, or ‘the inclination, to form an opinion. The subject-matter was before the proper tribunal ; they are presumed to have decided “ in the fear of God, and according to the statutes of the founder, the constitution of the seminary and the laws of the land.” No legal exception is taken to their proceedings in this particular. The consequences of their opinion on the vital interests of a respectable officer of the institution, were before them. We should usurp an authority not given to us by the law, were we to interfere with or obstruct their decision.
*337 It is wholly unnecessary to consider the additional charges «gainst which objections have been made, the one last considered being sufficient and conclusive in its nature.
It was objected that illegal and improper evidence was admitted to prove the charge of negligence, but the record does not show what the evidence was which is complained of, and it Is denied that any such was admitted.
It is also objected, that the visitors refused to admit the statement of Dr. Murdock in explanation of his conduct, which he was willing to substantiate by his oath; but in this they acted according to the strict rules of law, which rejects the declarations of a party ; though it was within their discretion to have admitted it, had they seen fit.
Having taken a view of the whole ground, and considered all the points submitted to us by counsel, we are satisfied that nothing has been made to appear wherein the visitors have exceeded the limits of their jurisdiction, or acted contrary to the statutes of the institution, and therefore that this appeal must be dismissed and the sentence of the visitors stand in full force.[1]

Decree affirmed.

 See Revised Stat. c. 81.

 See Garnett v. Ferrand, 6 Barn. & Cressw. 611.

 See Murdock v. Phillips Academy, 12 Pick. 244; Dutch Ref. Church in Albany v. Bradford, 8 Cowen, 457; Allen v. M’Keen, 1 Sumner, 276.