In the Matter of the Application of CHARLES D. NEWTON, Attorney-General, in Behalf of the PEOPLE OF THE STATE OF NEW YORK, for a Writ of Mandamus against F. PARK LEWIS, M. D., President, WILLIAM C. CASEY, Treasurer, Mrs. WOLCOTT J. HUMPHREY, JOHN KENNEDY, Mrs. ELIZABETH D. MIX, F. W. SEVERNE and Mrs. LIDA WALFROF WATERHOUSE, Constituting the BOARD OF TRUSTEES OF THE NEW YORK STATE SCHOOL FOR THE BLIND.

Supreme Court, Albany County, April, 1922.

Charities — powers of state board of charities over charitable institutions — board can compel School for the Blind at Batavia to furnish record of attendance of trustees at meetings and transcript of the minutes of the meetings — scope of visitatorial powers — Laws of 1919, chap. 136.

Where the Constitution confers a power or enjoins a duty it also by implication confers all powers that are necessary for the exercise of the one or the performance of the other.

When the state board of charities was made a constitutional body (State Const. art. VIII, § 11) and clothed with visitatorial power over all charitable and eleemosynary institutions of the state, with certain exceptions, the intent was clear to establish said board as a permanent department of the state government

and to grant it a power and authority unlimited by constitutional restrictions of visitation and inspection of the charitable institutions within the state.

The right of visitation having been placed in the Constitution so that it could not be taken away except by express approval of the people, such right cannot be essentially impaired, and to assert that the terms of the constitutional provision should be limited by interpretation to their plain definitive meaning, is to ignore the extent and scope of the visitatorial power as it has been applied and developed in the history and growth of private and public charity.

The statute (Laws of 1919, chap. 136) by which all the power and duty theretofore exercised and performed by the state board of charities relating to the New York School for the Blind at Batavia, under the State Charities Law, were transferred to the commissioner of education, declares that " Nothing herein contained shall in any way deprive the state board of charities of its powers of visitation and inspection in regard to said school for the blind as provided in the constitution nor affect in any way the fiscal control of said school now exercised under the state charities law by the fiscal supervisor of the state charities." The board of trustees of said school has refused to furnish the state board of charities a statement of the attendance of the board of trustees at regular and special meetings and a transcript of the records of such meetings, basing such refusal upon the claim that since the said statute of 1919 said reports cannot be required because they do not come within the meaning of the power of visitation or inspection expressly conferred upon the state board of charities by the Constitution of the state and are specifically excepted by the said statute of 1919. *Held*, that, independent of statutory regulation, it was not only the right but the duty of the state board of charities, pursuant to its constitutional power and obligation, to take such steps to inform itself if the purpose of the institution, of which the state in its sovereign capacity is the founder, is being maintained free from irregularity and abuse, and that the application of the attorney-general of the state for a writ of mandamus commanding the board of trustees of said school to make written reports of the matters which it refuses to give, will be granted.

If the institution is improperly or improvidently managed or if the laws of the state are violated the state board of charities may set the machinery of correction in motion by report to the legislature, to the attorney-general or to other public officials charged with the duty of action to enforce a right or redress a wrong.

APPLICATION for writ of mandamus.

*Charles D. Newton,* attorney-general (*Edward G. Griffin,* deputy attorney-general, of counsel), for state of New York.

*John Knight,* for respondent.

STALEY, J. The attorney-general of the state of New York makes application herein for a writ of mandamus, commanding the board of trustees of the New York State School for the Blind, at Batavia, N. Y., to make written reports to the state board of charities of the following matters:

(1) As to the visits and inspection of said institution by the said board of trustees, and the condition of said institution.

(2) Written reports of the attendance of said board of trustees at its regular and special meetings.

(3) The minutes of the regular and special meetings of said board of trustees.

The inception of the New York State School for the Blind, at Batavia, N. Y., is found in chapter 587 of the Laws of 1865, which provides for the appointment of five commissioners to select a site upon which to erect the institution.

It also provides for the appointment of commissioners to contract for the erection of the necessary buildings and makes an appropriation of $30,000 for the purchase of a site. The institution was then known as the " New York State Institution for the Blind."

Chapter 744 of the Laws of 1867 stated the objects of the institution and made provision for its management. By chapter 66 of the Laws of 1868 an appropriation of $100,000 was authorized for the completion of the buildings. Chapter 563 of the Laws of 1895 changed the name of the institution to the " New York State School for the Blind."

The institution is maintained partly at state expense, partly through county aid, and partly through the payment of tuition by individual students.

By chapter 136 of the Laws of 1919 it is provided that " All the powers of regulation, supervision and control heretofore exercised by the state board of charities upon, over and in relation to the New York State School for the Blind at Batavia, by virtue of the state charities law, are hereby transferred to and vested in the commissioner of education in addition to his other powers and duties, and the commissioner of education shall hereafter exercise and perform in relation to such state school for the blind all the powers and duties heretofore exercised and performed by the state board of charities relating to the regulation, supervision and control of such school under the provisions of the state charities law. *Nothing herein contained shall in any way deprive the state board of charities of its powers of visitation and inspection in regard to said school for the blind as provided in the constitution* nor affect in any way the fiscal control of said school now exercised under the state charities law by the fiscal supervisor of state charities."

Since the enactment of the last-named statute, the board of trustees of the New York State School for the Blind has refused to furnish the state board of charities a statement of the attendance of the board of trustees at regular and special meetings and a transcript of the records of such meetings. Such refusal is based upon the claim that since the passage of the last-named act, said reports cannot be required, because they do not come within the meaning of the power of visitation or inspection expressly conferred upon the state board of charities by the Constitution of the state and are specifically excepted by the provisions of the act of 1919.

Section 11, article 8 of the New York State Constitution provides

for a state board of charities as a constitutional body and confers its powers and duties as follows: " The Legislature shall provide for a State board of charities, which shall *visit* and *inspect* all institutions, whether State, county, municipal, incorporated or not incorporated, which are of a charitable, eleemosynary, correctional or reformatory character, excepting only such institutions as are hereby made subject to the visitation and inspection of either of the commissions hereinafter mentioned, but including all reformatories except those in which adult males convicted of felony shall be confined."

The New York State School for the Blind comes within the class of institutions subject to the power of visitation and inspection by the state board of charities. *People ex rel. N. Y. Inst. for Blind v. Fitch,* 154 N. Y. 14.

The enactment of the legislature in 1919 limited the state board of charities to such jurisdiction of this particular institution as is conferred by the constitutional power and obligation of visitation and inspection. These terms in the New York Constitution have never received judicial interpretation so far as I am able to ascertain.

It is contended here that these words are to be construed according to their commonly accepted colloquial meaning. A review of the history of the law of charities makes it manifest that the words " visit," " visitation," " visitor," and " visitatorial power," have a special and technical significance when used in connection with charitable or eleemosynary corporations, and a correct determination of the extent and nature of the constitutional power conferred must depend upon the status and exercise of such power as it has been established in the development of the law regulating and controlling private and public charities.

The existence and exercise of a visitatorial power over charitable, eleemosynary and educational institutions is as old as the human impulse and bounty of man which created them for the relief of the sufferings of the distressed and for the improvement, refinement and culture of the mind.

In early times it became a maxim that he who gave the property, who founded the charity, might regulate it in the future. *Cujus est dare, ejus est disponere.* This right of visitation descended from the founder to his heirs, as a right of property, and precisely as his other property went to his heirs. In default of heirs it went to the king, as all other property went to the king for the want of heirs. It was a right that grew out of the donation and endowment of the property. The founder might part with it and vest it in others and his power of visitation was transferred to them instead

of descending to his heirs.   The right of visitation was a private right which could be asserted in law and which had the same protection of the law as other rights.   A transgression of the right in an attempted exercise of it, under some circumstances, might be redressed by the courts.

The English law controlling the right of visitation of private charitable institutions is tersely stated by Mr. Justice Washington in *Dartmouth College* v. *Woodward,* 4 Wheat. (U. S.) 518, 660, as follows: " But private and particular corporations for charity, founded and endowed by private persons, are subject to the private government of those who erect them, and are to be visited by them or their heirs, or such other persons as they may appoint.   The only rules for the government of these private corporations are the laws and constitutions assigned by the founder.   The right of government and visitation arise from the property which the founder had in the lands assigned to support the charity; and, as he is the author of the charity, the law invests him with the necessary power of inspecting and regulating it."

In the same case Mr. Justice Story, referring to the power of visitation which attached to a corporation of private foundation observed at page 673:   " To all eleemosynary corporations a visitatorial power attaches, as a necessary incident;   for these corporations being composed of individuals, subject to human infirmities, are liable, as well as private persons, to deviate from the end of their institution.   The law, therefore, has provided, that there shall somewhere exist a power to visit, inquire into, and correct all irregularities and abuses in such corporations, and to compel the original purposes of the charity to be faithfully fulfilled. The nature and extent of this visitatorial power has been expounded with admirable fulness and accuracy by Lord Holt in one of his most celebrated judgments."   *Philips* v. *Bury,* 1 Ld. Raym. 5; *Green* v. *Rutherforth,* 1 Ves. Sr. 462.

In the case of *Murdock* v. *Visitors of Philips Academy,* 24 Mass. 303, 322, Chief Judge Parker referring to the case of *Philips* v. *Bury, supra,* stated that the doctrine there laid down was sanctioned by the House of Lords and was the undisputed law of England and " without doubt is the common law of this land so far as it has not been altered by statute."   He further observed:  " By that law the visitor of all eleemosynary corporations is the founder or his heirs, unless he has given the power of visitation to some other person or body, which is generally the case;  and to the visitor thus constituted belongs the right and power of inspecting the affairs of the corporation and superintending all officers who have the management of them, according to such regulations and restrictions

as are prescribed by the founder in the statutes which he ordains, without any control or revision of any other person or body, except the judicial tribunals by whose authority and jurisdiction they may be restrained and kept within the limits of their granted powers, and made to regard the constitution and general laws of the land."

All eleemosynary corporations founded by the king were subject to the visitation of the king, and when founded by a private individual, to the visitation of the founder or his heirs, or a person specially appointed by the founder. The founder of all corporations, in the strictest and original sense, was the king alone for he only could incorporate a society, but in eleemosynary foundations where there is an endowment of lands, the law distinguished and made two species of foundation — the one *fundatio incipiens*, or the incorporation, in which sense the king was the general founder; the other, *fundatio perficiens*, or the donation of it, in which sense the first gift of the revenues was the foundation, and he who gave them was in law the founder. 2 Rolle Abr. (Chitty) 230; *Eden* v. *Foster*, 2 P. Wms. 325, 326; 3 Black. Comm. 48; *Philips* v. *Bury*, 2 T. R. 346, 352.

Where the king possessed the right of visitation his power was exercised in the Court of King's Bench, where all misbehaviors were inquired into and redressed and all controversies tried and decided.

Where the governors of a charitable or eleemosynary institution were incorporated and its revenues placed in their hands, it was deemed that if in that case there were no visitatorial power over such corporations it would be without control, and that it would be useless to give rules on the foundation of the charity, if there was no one to see them enforced; and, therefore, the governors in such a case were not vested with a visitatorial power. Gilb. Eq. Cases, 180.

A visitor has been generally described to be, " A person distinct from the body of the institution, but vested with the power and authority of visiting the same for the general benefit of it. He is the protector of all its rights, privileges and immunities and is in the very place and stead of its founder to supervise and take care that all the statutes made by the founder or other legal authority be duly kept and observed." 2 Ayliffe's Hist. of Oxford, 73.

The common law of England thereby recognizes and sustains the right and privilege of a founder of a charity to be the legislator with respect to the laws and rules which shall be prescribed for the supervision and regulation of this foundation.

If the power given to the visitor was unlimited, he had, in respect to the foundation and property moving from the founder, no rule

but sound discretion. If there were statutes, they were the rules by which he was bound; and if he acted contrary to or exceeded them he acted without jurisdiction and consequently his act was a nullity. *Philips* v. *Bury*, 1 Ld. Raym. 5; S. C., Skinn. 447; *Green* v. *Rutherforth*, 1 Ves. Sr. 472.

A visitor specially appointed had no greater authority or power than the founder gave him. As visitor he derived his being, power and authority from the founder; and if he gave him authority in some things and cases and not in others, and qualified and limited such power the visitor could not exceed the power and authority which was given to him. *Philips* v. *Bury*, *supra;* S. C., Skinn. 447; 2 T. R. 346.

Authority and precedent are abundant to sustain the origin, the extent and beneficial purpose of the power of visitation over charitable institutions. In American jurisdictions its exercise, while recognized under the common law, has generally been authorized and applied by statutory enactment providing for its method and scope of operation. In this proceeding the grant of power is in general terms and its extent and method of exercise require interpretation as they relate to the particular institution.

The New York State School for the Blind was instituted and erected by the state of New York and the state in its sovereign capacity is the founder of the charity. Its purpose is to furnish to the blind children of the state the best-known facilities for acquiring a thorough education, and to train them in some useful profession or manual art, by means of which they may be enabled to contribute to their own support after leaving the institution. Laws of 1867, chap. 744, § 4.

Its management is vested in a board of trustees which has charge of all its affairs with power to make all necessary regulations for its government and proper management and to do all things which may be found necessary for the advancement of its humane design. Laws of 1867, chap. 744, § 8.

The board of trustees is required by statutes of the state to furnish reports to the state educational department, the state fiscal supervisor and the governor of the state and is also subject to the constitutional power of the state board of charities to visit and inspect the institution.

When the state board of charities was made a constitutional body and clothed with visitatorial power over all charitable and eleemosynary institutions of the state, with certain exceptions, the intent was clear to establish the board in the supreme law of the state as a permanent department of the state government and to grant it a power and authority, unlimited by constitutional restric-

tion, of visitation and inspection of the charitable institutions within the state.

That the use of the terms in the Constitution and their intended investiture of power and authority was related in a general sense to the rights conferred by the power of visitation, as that power had been established and exercised and interpreted under the common law, and later under the statute law, is not to be doubted.

To assert that these terms in the Constitution should be given a strict construction limiting their interpretation to their plain definitive meaning is to ignore the extent and scope of the visitatorial power as it has been applied and developed in the history and growth of private and public charity.

It cannot be declared as the law that the constitutional power of the state board of charities to visit and inspect charitable institutions meant no more than the privilege, which is granted to all citizens, to look at, take an official view or to physically inspect and examine for the purpose of ascertaining the condition of any institution, for such a power would be a useless and meaningless authority, if its merit lies in mere visual gratification. I think it may be recognized that there is a distinction in law as well as in life between looking at something and seeing it.

The right of visitation was placed in the Constitution so that it would not be taken away except by express approval of the people, and if it cannot be taken away, neither can it be essentially impaired.

It is an established rule of construction that where a Constitution confers a power or enjoins a duty it also confers by implication all powers that are necessary for the exercise of the one or for the performance of the other.

It is, therefore, not only the right but the duty of the state board of charities, pursuant to its constitutional power and obligation, to take such steps, independent of statutory regulation, in the exercise of its patronizing control and supervision to inform itself if the purpose of the institution is being maintained, if its management is free from irregularity and abuse, economical and honest, if the statutes of the state and the rules of the trustees are observed, and if those in whose hands it is placed are diligent and faithful in the discharge of the trust which they hold in the name of the people of the state who are the founder of the charity. If the institution is improperly or improvidently managed, or if the laws of the state are violated, it may set the machinery of correction in motion by report to the legislature, to the attorney-general or to other public officials charged with the duty of action to enforce the right or redress the wrong.

The matters sought to be compelled by this application clearly come within the scope of the constitutional visitatorial power of the state board of charities and reports of the acts of the board of trustees and of the condition of the institution are reasonable incidents of the power conferred and properly compelled through its operation and exercise.

The writ of mandamus applied for herein is, therefore, granted, without costs.

Writ granted.