HENRY KOSTER, a Taxpayer of the City of Yonkers, Appellant, v. JOHN H. COYNE, as Mayor of the City of Yonkers, et al., Respondents.

1. CITIES — CONSTITUTIONAL LAW — STATUTE (L. 1905, CH. 501) AMENDING "WHITE CHARTER" CONSTITUTIONAL, ALTHOUGH NOT TRANSMITTED TO CITIES AFFECTED THEREBY (CONST. ART. 12, § 2). The statute (L. 1905, ch. 501) amending the "act for the government of cities of the second class" (L. 1898, ch. 182), commonly called the "White Charter," so that the provisions thereof shall not apply to any city that becomes a city of the second class in the enumeration to be had in the year 1905, until on and after the 1st day of January, 1908, except that the officers provided in such act for such city as becomes a city of the second class after such enumeration shall be elected at the city election to be held on the Tuesday succeeding the first Monday in November, 1907, is con·stitutional, although a certified copy thereof was not transmitted to any city or cities affected thereby, as required by the Constitution (Art. 12, § 2) in case of special city laws; since such statute is a general, not a special, city law under the provisions of said section defining general city laws as "those which relate to all the cities of one or more classes," and special

city laws as those "which relate to a single city or to less than all the cities of a class." By its express terms the statute relates to all of the cities of the state, not then in the second class, which might thereafter come into that class as a result of the enumeration in 1905, so that all of such cities might have a reasonable time to adapt their government to the changed conditions.

2. YONKERS (CITY OF) — EFFECT OF STATUTE (L. 1905, CH. 501) WHEN YONKERS BECAME A CITY OF THE SECOND CLASS UNDER ENUMERATION OF 1905. Under the enumeration taken in 1905 the city of Yonkers, previously a city of the third class, governed by a special charter which provided for the election of two aldermen from each ward, became a city of the second class, but the statute (L. 1905, ch. 501) which amended the "White Charter," prevents the original provisions of that charter from so applying to the city of Yonkers as to reduce the number of aldermen from two to one in each ward until January 1, 1908.

3. SAME — CONSTRUCTION AND EFFECT OF PROVISIONS OF CONSTITUTION (CONST. ART. 12, § 3) UPON CHARTER PROVISIONS RELATING TO ELECTION AND TERMS OF ALDERMEN — PROCEEDINGS TO FILL VACANCY IN OFFICE OF ALDERMEN. The provisions of the Constitution (Const. art. 12, § 3) providing that "all elections of city officers * * * except to fill vacancies, shall be held on the Tuesday succeeding the first Monday in November in an odd-numbered year, and the term of every such officer shall expire at the end of the odd-numbered year," apply to the election of aldermen and are mandatory; when the city of Yonkers became a city of the second class it became subject to those provisions and was required to elect aldermen on the Tuesday succeeding the first Monday in November, 1905, whose terms would expire at the end of 1907; the terms of the aldermen elected in such city in 1904 for the term of two years to expire in December, 1906, were abridged so as to expire, at the latest, with the last day of December, 1905; but the offices to which such aldermen had been elected were not thereby abolished; until the provisions of the "White Charter" took effect providing for the election of aldermen in November, 1907, to take effect January, 1908, the provisions of the original special charter of the city of Yonkers continued in force and provided for the election of two aldermen from each ward; when, therefore, one of the aldermen of a ward, elected in 1904, for the term of two years, was elected mayor of the city at the election held in November, 1905, and resigned his office as alderman on the thirteenth of that month, there was, consequently, a vacancy and the common council had the power to order a special election to fill such vacancy for a term which will expire December 31, 1907.

4. RESOLUTION ORDERING SPECIAL ELECTION OF ALDERMAN TO FILL VACANCY — IMMATERIAL ERROR. Although the resolution of the common council, ordering such special election and describing the vacancy to be filled as one "for the unexpired term of two years commencing

December 1st, 1904, and ending November 30th, 1906," was erroneous because such term, under the constitutional and statutory provisions applicable thereto, expired in 1905 instead of 1906, such error is to be regarded as an immaterial irregularity which does not affect the validity of the proceedings for such special election.

*Koster* v. *Coyne,* 110 App. Div. 742, affirmed,

(Argued March 8, 1906; decided April 17, 1906.)

APPEAL, by permission, from an order of the Appellate Division of the Supreme Court in the second judicial department, entered February 1, 1906, which reversed an order of Special Term enjoining *pendente lite* a special election to fill an alleged vacancy in the office of alderman of the second ward of the city of Yonkers.

The following questions were certified: "1. Is chapter 501 of the Laws of 1905 constitutional?

"2. Does section 3 of article 12 of the State Constitution affect the term of the alderman of the second ward of the city of Yonkers, elected in November, 1904, and did the term of said office expire on December 31st, 1905?"

The facts, so far as material, are stated in the opinion.

*John F. Brennan* for appellant. Chapter 501 of the Laws of 1905, which sought to suspend the operation of the second class city charter until January 1, 1908, is unconstitutional. (Const. of N. Y. art. 12, § 2; *Matter of Church,* 92 N. Y. 4; *Matter of Henneberger,* 25 App. Div. 168; 155 N. Y. 424; *Matter of N. Y. & L. I. B. Co.,* 148 N. Y. 540; *People ex rel. Einsfeld* v. *Murray,* 149 N. Y. 367; *Chrystal* v. *Mayor, etc.,* 63 App. Div. 98; *Cahill* v. *Hogan,* 180 N. Y. 304; *People ex rel. Eldred* v. *Palmer,* 154 N. Y. 133; *Long* v. *Mayor, etc.,* 81 N. Y. 425; *People ex rel. Gere* v. *Whitlock,* 92 N. Y. 198.)

*Thomas F. Curran* for John H. Coyne et al., respondents. Chapter 501 of the Laws of 1905 is constitutional. (*Pryor* v. *City of Rochester,* 166 N. Y. 548; *People ex rel. City of Rochester* v. *Briggs,* 50 N. Y. 553; *Actor* v. *A. R. Co.,* 113

N. Y. 93; *Ferguson* v. *Ross*, 126 N. Y. 459.)   Chapter 501
of the Laws of 1905, being constitutional, the city of Yonkers
is governed by its special charter (L. 1895, chap. 635), pur-
suant to the provisions of which charter an election to fill the
vacancy in the office of alderman of the second ward must be
held.   (*People* v. *Fitzgerald*, 180 N. Y. 269)

*James M. Hunt* for John H. Southwick et al., respondents.
Chapter 501 of the Laws of 1905 is not unconstitutional or
void, but is legal, binding and operative, and effectually post-
pones the operation of the White charter in the city of Yon-
kers until January 1, 1908.   (*Pryor* v. *City of Rochester*,
166 N. Y. 548; *McGrath* v. *Grout*, 171 N. Y. 7.)

*Francis A. Winslow* and *William J. Wallin* for Daniel
J. Cashin et al., respondents.   Chapter 501 of the Laws of 1905
is constitutional.   (*People ex rel. City of Rochester* v. *Briggs*,
50 N. Y. 553; *Actor* v. *A. R. Co.*, 113 N. Y. 93; *Ferguson*
v. *Ross*, 126 N. Y. 459.)   Chapter 501 of the Laws of 1905
being constitutional, the city of Yonkers is governed by its
special charter (L. 1895, ch. 635), pursuant to the provisions
of which charter an election to fill the vacancy in the office
of alderman of the second ward must be held.   (*People ex
rel. Eldred* v. *Palmer*, 154 N. Y. 133; *People* v. *Fitzgerald*,
180 N. Y. 269.)

*Charles Philip Easton* for Board of Education of the City
of Yonkers, intervening.   Chapter 501 of the Laws of 1905
is constitutional and postpones the operation of the uniform
charter for cities of the second class in the city of Yonkers
until January 1, 1908.   (*Pryor* v. *City of Rochester*, 166
N. Y. 548.)

HISCOCK, J.   The order appealed from should be affirmed.
While, as we understand it, the particular proceedings for a
special election involved in this action have run down and
have ceased to be a matter of practical consequence, the
important questions raised with reference to them still remain

32

to be dealt with and, therefore, deserve our consideration at some length.

Prior to the census enumeration of 1905 the city of Yonkers was a city of the third class, governed by a special charter (Chapter 635, Laws of 1895.) This charter, amongst other things, provided for the election of two aldermen from each of the several wards. In accordance with these provisions, in the year 1904, the defendant Coyne was elected one of such aldermen from one of the wards for the term of two years, which would expire December 1, 1906. Having been elected mayor of the city at the election held in November, 1905, he thereafter, and upon the 13th day of said month, resigned his aldermanic office. Thereafter the common council attempted by resolution to provide for a special election to be held January 13, 1906, for the purpose of filling the supposed vacancy caused by such resignation and fixing the term to be filled as expiring Dember 1, 1906. This is the election which appellant has sought to enjoin.

He contends that there was no vacancy to be filled, and hence that said special election was unlawful, basing this contention upon two propositions :

First, he urges that, under the enumeration of 1905, Yonkers became a city of the second class and passed under the provisions of the White charter, so called (Chap. 182 of the Laws of 1898), which provided for only one alderman from each ward and abolished any vacancy to be filled by special election which otherwise might have resulted from Coyne's resignation of the second aldermanship.

And, in the second place, as we understand his argument, he urges that the provisions of section 3, article XII, of the Constitution, with reference to the election of municipal officers in odd-numbered years, somehow so affected the former office held by Coyne that there was no vacancy to be filled in 1906.

These claims require the consideration of various constitutional and statutory provisions and will be considered in the order stated.

The enumeration taken in 1905 indicated that the city of Yonkers had a population of over fifty thousand and less than two hundred and fifty thousand, and a proper certificate to that effect was filed October 5, 1905.

Upon the fulfillment of these conditions it became a city of the second class in accordance with the provisions of section 2 of article XII of the Constitution.

Under the provisions of the White charter, as originally adopted, the result claimed by appellant doubtless would have followed of the abolition of the right to two aldermen in each of the wards, and Mr. Coyne's resignation would have occasioned no vacancy to be filled. But by chapter 501 of the Laws of 1905 the original act for the government of cities of the second class was so amended as to provide that its provisions should " not apply to any city that became (becomes) a city of the second class in the enumeration to be had in the year 1905, until on and after the 1st day of January, 1908, except that the officers provided in such act for such city as became (becomes) a city of the second class after such enumeration, should (shall) be elected at the city election to be held on the Tuesday succeeding the first Monday in November, 1907," and which amendment took effect immediately.

Appellant seeks to avoid the obvious consequences of this amendment in postponing any abolition of or change in the municipal offices of the city of Yonkers under its original and special charter, by claiming that it was unconstitutional and invalid. This claim is based upon section 2 of article XII of the Constitution, which, in effect, divides laws relating to the property, affairs or government of cities into general and special city laws, and provides that special city laws shall not be passed until after a certified copy of any bill relating to a city has been transmitted to the mayor of said city and returned with a certificate whether the city has or has not accepted the same, etc. It is conceded that no copy of the amendment in question was ever transmitted to the mayor of Yonkers, and appellant's conclusions would be convincing if he were right in his assumption that this was a special city

law.   We do not think, however, that such was its character
in any degree whatever.   The provision of the Constitution
in question defines general city laws as " those which relate to
all the cities of one or more classes," and special city laws as
those " which relate to a single city, or to less than all the
cities of a class."   We are unable to see any force in the
claim that under these definitions the amendment was any-
thing less than a general law.   By its terms it expressly
related to all the cities of the state which might become cities
of the second class under fixed conditions and at a future
date.   At the time it was adopted the enumeration referred
to had not been completed and there was no way in which the
legislature officially and legally could determine what cities
would or would not come within its terms.   It affected gener-
ally every city not then in the second class and which by any
possibility might come into that class through the results of
the enumeration then to be taken.   In effect it considered
all the municipalities of the state as constituting two classes,
those then belonging to and those not belonging to the second
class, and it was addressed universally and without discrimina-
tion to all of the latter.   It was apparently adopted with the
wise intention of giving cities a reasonable time within which to
adapt their government to changed conditions, and no extended
argument can make it plainer than do the very terms of the
statute itself that it was general and not special legislation.
The difficulties into which appellant's argument would lead
from a practical standpoint occur to the mind at once when
we ask how the legislature could have complied with the
constitutional provisions requiring a copy of a special law to
be sent to the mayor of a city and to what mayors of what
cities it would have been necessary to send a copy of this
amendment before the results of the enumeration of 1905
were known.

We, therefore, have no difficulty in determining that appel-
lant's first contention is not a good one and that the amend-
ment in question did prevent the original provisions of the
White charter from so applying to the city of Yonkers at the

times in question in this proceeding as to reduce the number of aldermen to one from each ward, and we pass to the other point involved.

We believe that appellant is right, that section 3 of article 12 of the Constitution applied to the office held by the respondent Coyne in November, 1905. That section provides that "all elections of city officers * * * except to fill vacancies, shall be held on the Tuesday succeeding the first Monday in November in an odd-numbered year, and the term of every such officer shall expire at the end of an odd-numbered year." Said section also provides for such extension or abridgment of the terms of office of such officers elected before the 1st day of January, 1895, as will make them expire with the end of an odd-numbered year, also that the section shall not apply to any city of the third class.

This last clause does not exempt the city of Yonkers from the application of said section after it became a city of the second class as the result of the enumeration of 1905, and the filing of the certificate in October of that year.

It is true that the respondent Coyne had been elected for the term of two years in 1904, and before the city as one of the second class passed under the provisions of this section, and the section does not in specific terms provide for such a case. As is well understood, however, it was adopted in response to a general sentiment in favor of separating municipal from general elections in all large cities in the hope of securing better results in the former, and it is our duty to give such liberal construction as will carry out this policy and secure the application and enforcement of its provisions wherever possible.

The provision is mandatory in requiring that the election of such a city officer as an alderman shall be held in an odd-numbered year and that his term shall expire in an odd-numbered year. It is to be regarded as fairly applicable to all cases which might arise within its terms after its adoption, and when in October the city of Yonkers became a city of the second class, we see no difficulty in making it subject to

the provisions quoted and in holding that it was required to elect aldermen on the Tuesday succeeding the first Monday in November, 1905, whose terms would expire at the end of 1907, and that the terms of those aldermen elected in 1904 would expire at the outside with the last day of December, 1905. Unless this construction is adopted we shall have an anomalous condition of affairs. The city having become one of the second class, the provisions of the Constitution now under review would certainly be applicable in 1906 when the terms of the aldermen as originally fixed would expire and those provisions would prohibit an election in an even-numbered year. In addition, the provisions of the White charter already referred to would require an election of aldermen, one from each ward in November, 1907. Thus the only way of allowing aldermen to the city would be by permitting those whose terms expired in 1906 to hold over until November, 1907, or January, 1908. We do not think that this would be a good result or that it is required by a reasonable construction of all of the provisions applicable. The city was undoubtedly entitled to aldermen under some system for the period intervening between the expiration of the terms of office of those elected under the special charter before it became a city of the second class, and the date when it was entitled to elect aldermen under the provisions of the White charter, and the construction which we have adopted seems to secure this right in the way most natural and in accordance with the spirit of the constitutional provisions bearing upon this subject. It does not, however, at all follow that because these provisions abridged the terms of office of the aldermen elected in 1904, in the manner stated, they abolished the offices to which the latter had been elected. Until the provisions of the White charter took effect providing for the election of aldermen in November, 1907, to take effect January, 1908, the provisions of the original special charter of the city of Yonkers continued in force, and provided for the election of two aldermen from each ward. The office originally held by Mr. Coyne has not been filled, but is vacant, and there is no

reason why proper proceedings should not be taken to fill it for the term which will expire December 31, 1907.

The resolution of the common council ordering a special election described the vacancy to be filled as one "for the unexpired term of two years commencing December 1st, 1904, and ending November 30th, 1906." Under the construction which we have adopted, this description of the term of the vacancy to be filled was erroneous, as the term expired in 1905 instead of 1906. It is not urged, however, that this misdescription of the vacancy so affected the proceedings for a special election as to render them illegal and furnish a basis for the injunction which was obtained. Such contention could not be successfully made. The vacancy in the office of alderman existed at the time when the common council instituted the proceedings for a special election. The charter of the city of Yonkers required that body to institute proceedings for such election. The provisions of the Constitution and of the statutes which we have already considered defined and fixed the termination of the office to which an election was to be made. These provisions, of course, could not be changed or impaired by the proceedings of the common council. There does not seem to be any room for criticism upon the essential portions of the resolution called to our attention which provided for notice to the electors of the time and place and substantial object of the election to be held. Under these circumstances the error in describing the term of office to be filled is to be regarded at most as an immaterial irregularity which would not affect the validity of the proceedings which were made the subject of this action.

The order appealed from should be affirmed, with costs.

Cullen, Ch. J., O'Brien, Haight, Vann and Willard Bartlett, JJ., concur; Werner, J., absent.

Order affirmed.