George Beisheim, Jr., J.
The plaintiff landlords have instituted this action against .the City of Yonkers for a declaratory judgment that the Declaration of Housing Emergency passed by the City Council of the City of Yonkers on June 28, 1974, is invalid, illegal and unconstitutional. The city takes the position that its resolution of June 28, 1974, was a valid exercise of the power delegated to it under the Emergency Tenant Protection Act (hereinafter designated ETPA) passed by the New York State Legislature, effective as of May 29,1974 (L. 1974, ch. 576).
Plaintiffs maintain that the declaration or resolution of the city was invalid by reason of the fact that it was not based on any findings of fact by the City Council allegedly required under subdivision a of section 3 of the ETPA, and also because the City Council conducted no survey of housing accommodations within the city and had no other reasonable basis upon which to make a finding that the vacancy of all classes of rental housing in Yonkers as required by the ETPA was 5% or less.
Plaintiffs contend further and affirmatively offered a survey at the trial to prove that the Declaration of Emergency was invalid by reason of the fact that at the time of its passage there was more than 5% vacancy rate in all classes of housing within the City of Yonkers which were not exempt from the ETPA.
Plaintiffs also argue that the city in its use of whatever survey or other source of information it relied upon in reaching its determination that the vacancy rate was 5% or less included exempt rental classifications in its calculations which plaintiffs claim was in contravention of the provisions of Sections 3 and .5 of the ETPA.
*602 It is plaintiffs ’ position that by reason of the foregoing, they and all other apartment building owners in the City of Yonkers who are subject to the ETPA and the city’s resolution have been deprived of their property without due process of law as required by section 6 of article I of the Constitution of the State of New York.
At the trial of this action there was introduced into evidence (plaintiffs’ Exhibit 2) the minutes of the public hearing before the City Council on June 28, 1974, which consisted only of Resolution 270-1974 which was previously adopted by the City Council at a meeting held June 11, 1974, by a vote of 11 to 1, with one absentee and the following brief notation:
‘ ‘ No written protests.
Speakers: For — Harry Rosenblum, representing the Senior Council of Senior Citizens; Mrs. Gertrude Yarock, reading a statement from Mr. Moe Gancher; Estelle Semel, 31 Nassau Rd., Yonkers; Sol Slifkin, 3 Sadore Lane, Yonkers; Mrs. Gertrude Yarock, 45 Amber-son Ave., Yonkers
Against — Stephen J. Lehrman
Motion by Vice Mayor Hanney to close Public Hearing. Motion adopted by a vote of 12 to 0; Councilman Freddolino absent.”
No 'Stenographic minutes of the hearing were made.
Plaintiffs also introduced into evidence (plaintiffs’ Exhibit 1) Resolution 286-1974 which was passed by the City Council on June 28, 1974, after the public hearing had been closed. Resolution 286-1974 (plaintiffs’ Exhibit 1) is an identical resolution to Resolution 270-1974 passed on June 11,1974, and incorporated in plaintiffs ’ Exhibit 2.
Plaintiffs introduced testimony at the trial, which was not contradicted, that at the public hearing of June 28, 1974, the city introduced no evidence whatsoever, and that the persons who spoke in favor of the resolution produced no documents or presented any facts pertaining to the criteria set forth in section 3 of the ETPA, to wit:
‘ ‘ .a) the basis of the supply of housing accommodations within such city,
“ b) the condition of such accommodations, and the
‘ ‘ c) need for regulating and controlling residential rents within such city.”
*603 Testimony at trial also disclosed that at the hearing before the City Council no evidence was presented relevant to the vacancy rate of rental housing in the City of Yonkers except for a survey filed by Stephen J. Lehrman on behalf of the Builders Institute and Apartment Owners’ Advisory Council. This survey with minor alterations was introduced into evidence at the trial as plaintiffs’ Exhibit 3.
The defendant City of Yonkers at the trial presented the testimony of three witnesses, to wit, the Chief of the City of Yonkers Department of Planning, the City Planning Director, and the Assistant to the Mayor. The Chief of the Department of Planning presented a statistical analysis completed in December, 1974 (defendant’s Exhibit C) which purported to show that the vacancy rate as of June, 1974, was 4.1%. The Assistant to the Mayor testified that some of the information contained in defendant’s Exhibit C had been furnished to the Mayor and some of the City Councilmen on or before June 11,1974, in connection with another resolution considered by those individuals. The city admitted that no actual survey of rental housing vacancies had been made by the city and that the analysis completed by the Chief of the Department of Planning in December, 1974, was based upon the United States census data of 1970 plus certain additional information and estimates made by this official affecting the period from 1970 to June, 1974.
The court shall consider first plaintiffs’ contention that the determination by the City Council as to whether a 5% or less vacancy rate existed in all housing accommodations in the City of Yonkers is purely an administrative act. Of course, if plaintiffs should be correct in this contention, there would have to be substantial evidence in the record of the hearing before the City Council on June 28, 1974, to support the validity of the resolution (plaintiffs’ Exhibit 1). (Matter of Collins v. Behan, 285 N. Y. 187; Matter of Ennis v. Crowley, 12 A D 2d 999.)
Plaintiffs submit no cases to support their argument that the Council’s resolution was an administrative rather than a legislative act and the court finds that, contrary to plaintiffs’ contention, the Council in passing the resolution of June 28,1974, acted in a legislative capacity. (Meyers v. New York State Div. of Housing and Community Renewal, 36 A D 2d 166.)
Subdivision a of section 3 of ETPA reads in part as follows: “ A declaration of emergency may be made as to any class of housing accommodations if the vacancy rate for the housing accommodations in such class within such municipality is not in excess of five percent and a declaration of emergency may be *604 made as to all housing accommodations if the vacancy rate for the housing accommodations within such municipality is not in excess of five percent.”
Pursuant to the delegation of authority of the foregoing section, the Yonkers City Council passed a resolution or declaration of emergency after the public hearing on June 28, 1974. The resolution stated, inter alia:
‘ ‘ whereas, there exists in the City of Yonkers a housing emergency in regards to the plight of apartment dwellers, and
“ whereas, the vacancy rate in the City of Yonkers is below five (5%) per cent, now, therefore,
be it resolved, that the City Council of the City of Yonkers does hereby declare that a housing emergency exists in the City of Yonkers for all accommodations set forth in the Emergency Tenant Protection Act of 1974 of New York State ”.
The Meyers case (supra), involved a situation where the Village of Rockville Centre adopted a resolution requesting the State Division of Housing and Community Renewal to decontrol housing accommodations within the village after a public hearing on notice and upon a finding set forth in the resolution that decontrol was warranted. Mr. Justice Hopkins clearly set forth the legal ground rules under which a local community was operating in such a situation. He stated at page 169:
“ We think that the effectuation of the legislative policy by the delegation of power to the local unit of government is plainly constitutional (People ex rel. Wakeley v. McIntyre, 154 N. Y. 628, 632; Stanton v. Board of Supervisors of County of Essex, 191 N. Y. 428; Cleveland v. City of Watertown, 222 N. Y. 159). As was stated in People ex rel. linger v. Kennedy (207 N. Y. 533, 545): ‘ the legislature may pass a statute which is a completed law affecting or conferring rights upon a restricted locality but to become operative only in the event of an affirmative vote by the people of such locality. ’ • We see no essential difference between a statute conferring rights on the electors of the locality and a statute conferring rights on the representative body of the locality. Both lie within the scope of the power of the Legislature.”
and continued at page 170:
“ The plaintiffs’ emphasis on the existence of standards implies of necessity that standards must be fixed by the Legislature whenever it delegates power to municipalities. But that is not a valid premise. Where the grant of power is specially defined, the use of the power by the municipality has no other limitations than would circumscribe the Legislature itself. ‘ An *605 ordinance adopted by such a corporation, pursuant to authority expressly delegated by the legislature, has the same force within the corporate limits as a statute passed by the legislature itself ’ (Village of Carthage v. Frederick, 122 N. Y. 268, 271; see, also, People ex rel. Doyle v. Atwell, 232 N. Y. 96). Here, the grant of power and the manner in which the power may be exerted are particularized in detail; and the contention that standards must accompany the delegation of power cannot be sustained. ” (Emphasis supplied.)
The difference between the Meyers case and the case at bar is that Mr. Justice Hopkins in the Meyers case ruled that, in effect, the language, in the statute that the local community could act ‘ ‘ upon a finding that decontrol is warranted ’ ’ was not a fact the existence of which was necessary to sustain the validity of the local legislative resolution, but father an exercise of a power specially defined by the local Legislature which the State Legislature had authorized the local council to do. In the case at bar, however, under ETPA it was necessary for the vacancy rate in the community not to be in excess of 5% as a condition precedent to validate the exercise of the authority delegated to the city to pass the declaration of emergency. This, however, does not mean that the City Council acted in an administrative capacity, but only that its authority to pass a legislative enactment — here the declaration of emergency — was predicated upon the condition that the vacancy rate in the city was not in.excess of 5%.
This court, therefore, must decide the issue raised at the trial herein under the rule as stated in New York Jurisprudence (vol. 40, Municipal Corporations, § 725) which states as follows: ‘1 Where the validity of an ordinance depends upon the existence of one or more facts at the time of the enactment thereof, the existence, and not the non-existence, of the facts necessary to sustain the validity of the ordinance should be presumed, in the absence of evidence to the contrary. ” (City of Rochester v. Macauley-Fien Milling Co., 199 N. Y. 207; Fifth Ave. Coach Co. v. City of New York, 194 N. Y. 19; Mayor etc. of City of New York v. Dry Dock, East Broadway & Battery R.R. Co., 133 N. Y. 104.) In this connection, the enactment of the Yonkers City Council is protected by the presumption of constitutionality and validity. (Lincoln Bldg. Assoc. v. Barr, 1 N Y 2d 413; S. E. Nichols Herkimer Corp. v. Village of Herkimer, 38 A D 2d 456.) The enactment is presumed to be supported by facts known to the City Council, or which could reasonably be assumed *606 by the City Council. (United States v. Carolene Prods. Co., 304 U. S. 144; Wiggins v. Somers, 4 N Y 2d 215.)
As was stated in De Sena v. Gulde, (24 A D 2d 165, 169): ‘ ‘ When a municipal legislative body enacts an ordinance, a presumption of validity attaches to its resolution (Rodgers v. Village of Tarrytown, 302 N. Y. 115; Shepard v. Village of Shaneateales, 300 N. Y. 115). The presumption of validity has the effect of (1) imposing the burden of proof on the party questioning the ordinance; and (2) sustaining the ordinance if the propriety of its enactment is fairly debatable. The content of the burden on the assailant is sometimes said to extend further than a mere preponderance of the evidence to proof beyond a reasonable doubt (Wiggins v. Town of Somers, 4 N Y 2d 215; but, see Thomas v. Town of Bedford, 29 Misc 2d 861, 866, affd. 15 A D 2d 573, affd. 11 N Y 2d 428). Still, the presumption is not irrebuttable (Arverne Bay Constr. Co. v. Thatcher, 278 N. Y. 222) ”.
The rule was clearly prescribed by the United States Supreme Court in the Carotene Prods, case (supra, p. 154) in its statement of its opinion: “ Such inquiries, where the legislative judgment is drawn in question, must be restricted to the issue whether any state of facts either known or which could reasonably be assumed affords support for it.”
At the trial of this action, the officials of the city testified that prior to June 30, 1974, the Mayor and some members of the City Council were furnished with information as to the vacancy rate for the City of Yonkers taken from the 1970 United States census which was shown to be 1.9%. They were further furnished with the number of certificates of occupancy issued from the date of the census to June, 1974, the number of rental units decontrolled, and the projected population increase. While the testimony does not show to what actual extent the statistical analysis of the chief city planner had progressed as of June, 1974, his appraisal completed in December, 1974 (defendant’s Exhibit C) showed the vacancy rate as of June, 1974, to be 4.1%.
The court is far from satisfied with the accuracy of the 4.1% vacancy rate contained in the city’s appraisal. It is based upon certain assumptions of somewhat questionable validity, and cannot be characterized as an exemplary document. Unfortunately, however, the probative value of plaintiffs ’ Exhibit 2 purporting to show a 5.26% vacancy rate is little, if any, . stronger than defendant’s Exhibit O. While the Builders Institute and Apartment Owners Advisory Council did make some *607 kind of a survey, its work was limited to returns from only 44 of the 150 members in the City of Yonkers of the Builders Institute and Apartment Owners Advisory Council. No returns were submitted from any apartment owners who were not members of the council ,and the returns covered approximately 3,000 rental units out of 12,000 or 13,000 in the City of Yonkers. The court could not determine whether or not this small percentage of returns was weighted in favor of apartment owners whose buildings had larger vacancy rates than apartments generally in the city. This court finds that the evidence presented by the plaintiffs was insufficient to overcome the combined factors of the presumption of constitutionality and validity of the declaration of emergency and the evidence presented by the city.
‘ ‘ Where the question of what the facts establish is a fairly-debatable one, we accept and carry into effect the opinion of the legislature.” (Old Dearborn Co. v. Seagram Corp., 299 U. S. 183, 196.
The statute contains no requirement that the local body should make a survey of housing accommodations as argued by the plaintiffs.
Finally, the plaintiffs contend that the city, in making its determination that there were rental vacancies of 5% or less included exempt rental classifications in its calculations in contravention of section 3 of ETPA. The court finds this contention without merit.
The declaration of emergency resolution (plaintiffs’ Exhibit 1) states:
“ be it resolved, that the City Council of the City of Yonkers does hereby declare that a housing emergency exists in the City of Yonkers for all accommodations set forth in the Emergency Tenant Protection Act of 1974 of New York State ”. (Emphasis supplied.) The last sentence of subdivision a of section 3 of ETPA, states:
“ A declaration of emergency may be made, as to any class of housing accommodations if the vacancy rate for the housing accommodations in such class within such municipality is not in excess of five percent and a declaration of emergency may be made as to all housing accommodations if the vacancy rate for the housing accommodations within such municipality is not in excess of five percent.” (Emphasis supplied.)
This court finds that the declaration of emergency passed by the City Council explicitly complied with the second alternative set forth in subdivision a of section 3 of the ETPA.
*608 Accordingly, the court finds that the plaintiffs are not entitled to the declaratory judgment which they seek.
The court, however, emphasizes the fact that the plaintiffs did not challenge, and this court did not rule upon, the constitutionality of ETPA. Inasmuch as the Attorney-General for the State of New York was not made a party to this action, this court — even if it deemed it necessary to do so — could not have passed upon the constitutionality of the State’s statute without giving the Attorney-General an opportunity to intervene in support of the constitutionality of the statute. (CPLR 1012, subd. [b]; Executive Law, § 71.)
The court, therefore, grants a declaratory judgment in favor of the defendant adjudicating that the Declaration of Housing Emergency passed by the Yonkers City Council on June 28, 1974, numbered Resolution 286 of 1974, was constitutional and valid pursuant to the delegation of power authorized under the Emergency Tenant Protection Act of 1974.
Plaintiffs or other parties, of course, are not precluded in the future should the facts so warrant from instituting the proper proceeding to obtain a judicial determination declaring an end to the emergency pursuant to subdivision b of section 3 of the Emergency Tenant Protection Act of 1974.