Theodore A. Kelly, J.
This is an action by plaintiff to permanently enjoin defendants, the owners, agents and managers of buildings located in the Village of Spring Valley, from violating the provisions of the Emergency Tenant Protection Act of 1974 (L 1974, ch 576) and the Emergency Tenant Protection Regulations (9 NYCRR 2505.1) by collecting or attempting to collect any rents in excess of the initial regulated rent prescribed by the act or the regulations, or by instituting or threatening to institute proceedings for the removal of any tenants for failure to pay more than the regulated rent.
The Emergency Tenant Protection Act (hereinafter the Act) was adopted in New York on May 29, 1974. The Act is administered by the State Division of Housing and Community Renewal which is authorized to implement its provisions by regulations. The Emergency Tenant Protection Regulations (hereinafter the Regulations) were adopted by the Commissioner of Housing and Community Renewal on May 29, 1974 to implement the provisions of the Act for housing outside the City of New York.
Any class of housing accommodations in a village may be subjected to the provisions of the Act if a declaration of emergency is made by the local legislative body of such village (Emergency Tenant Protection Act, § 3, subd a). Subdivision a of section 3 provides that a declaration of emergency may be made as to any class of housing accommodations if the vacancy rate for the housing accommodations within that class is not in excess of 5%. It further permits a declaration of emergency as to all housing accommodations if the vacancy rate for the housing accommodations in the village is not in excess of 5%. Once an emergency is declared, any owner is then prohibited from charging or collecting any rent in excess of the initial legal regulated rent or adjusted initial legal regulated rent, until a different legal rent has been authorized pursuant to guidelines adopted by the Rent Guidelines Board (Emergency Tenant Protection Act, § 6, subd a). For the purposes of this action, the last legal regulated rent would be *1029 the rent reserved in the last effective lease or other rental agreement (Emergency Tenant Protection Act, § 6, subd b, par [2])-
On June 27, 1974 the Spring Valley Village Board adopted a resolution declaring an emergency for housing in the village which contained one bedroom and rented for $240 a month or less. On September 30, 1974 a resolution was adopted declaring an emergency for all other housing in the village. Each resolution stated that the applicable vacancy rate was less than 5% as required by subdivision a of section 3 of the Act.
Plaintiff contends that defendants, notwithstanding the declarations of emergency, have demanded that tenants in their accommodations pay rents in excess of the initial legal regulated rents, and have threatened to evict tenants who refuse to sign leases providing for rent in excess of the initial regulated rents. Defendants contend, however, that the respective resolutions were improperly enacted since the vacancy rates for the subject housing were in excess of 5%.
Upon plaintiff’s motion for a preliminary injunction, the court directed that a hearing be held on the validity of the declarations of emergency. In lieu of a fact-finding hearing, the attorneys for the respective parties have entered into a stipulation relative to the resolution of September 30, 1974. In the stipulation, counsel for the plaintiff and the intervenor, the Village of Spring Valley, acknowledge that the resolution of September 30, 1974 was preceded by a survey of the housing accommodations in the village. When the survey was made, 223 apartment units were not counted. Plaintiff and the intervenor assert that these units were properly excluded since defendants had failed to obtain either a certificate of occupancy or a certificate of compliance for same. Defendants contend that these units should have been counted since they were "ready for occupancy and rentable.” All parties concede that the exclusion of these units lowered the vacancy rate below 5%. They further concede that, had these 223 units been counted, the vacancy rate would have exceeded 5% and the declaration of emergency of September 30, 1974 would have been illegal and improper.
No multiple dwelling may be occupied in whole or in part until the issuance of a certificate by the appropriate department that said dwelling conforms in all respects to the requirements prescribed by law (Multiple Dwelling Law, § 301, subd 1; Multiple Residence Law, § 302, subd 1). Such a certifi *1030 cate is to be issued within 10 days after written application therefor has been made if the dwelling is entitled thereto (Multiple Dwelling Law, § 301, subd 3; Multiple Residence Law, § 302, subd 4).
The ordinance of the Village of Spring Valley also provides that no building, structure or dwelling unit may be used or occupied in whole or in part until a certificate of occupancy has been issued by the building inspector for each such building, structure or dwelling unit (Code of Ordinances of Village of Spring Valley, § 513.011). However, in order to permit individual apartments in a building to be rented before the issuance of a certificate of occupancy, the Village of Spring Valley may issue a certificate of compliance (Multiple Dwelling Law, § 301, subd 4) or a temporary certificate of occupancy (Multiple Residence Law, § 302, subd 4).
Subdivision a of section 3 of the Act requires a declaration of emergency to be predicated upon the vacancy rate for the "housing accommodations” within the municipality. Defendants argue that the term "housing accommodations” should include all housing accommodations which are ready for occupancy, even though certificates of compliance may not have been issued by the building department. In support of this contention defendants rely upon the case of Central Plains Co. v City of White Plains (48 AD2d 326).
In Central Plains the Appellate Division, Second Department, held that the City of White Plains, in calculating whether there were rental vacancies of 5% or less to warrant declaration of a housing emergency under the Emergency Tenant Protection Act of 1974, was not required to exclude rental classifications which were exempt from rent control under the provisions of subdivision a of section 5 of the Act. The Appellate Division found that subdivision a of section 3 was clear and unambiguous and that the reference therein to "all housing” meant precisely that, "all housing,” including housing which the Act specifically prohibited the city from regulating. The court also pointed out that Justice Beisheim, in a similar case, had rejected the argument that exempt housing could not be included in a companion survey conducted by the City of Yonkers (Seasons Realty v City of Yonkers, 80 Misc 2d 601).
While exempt housing must be considered in determining the total number of housing units which are in fact available *1031 in a given local area (Central Plains Co. v City of White Plains, supra), it does not follow that the 223 units which are the subject of this action should be likewise considered. In order to be considered as available for occupancy, housing accommodations should be ready for occupancy. The subject units were not ready for occupancy. The right of any person to lawfully lease them from defendants depended upon the issuance of certificates of compliance by the Spring Valley Building Department. Defendants had not applied for such certificates when the survey was conducted. The fact that defendants have characterized these units as "ready for occupancy” does not mean that they could have been rightfully occupied. The right to lawful occupancy depended upon performance of a condition precedent which had not yet occurred. Accordingly, the village board properly excluded the units from consideration in determining the vacancy rate for housing accommodations in the village.
The motion for a temporary injunction is granted.