OPINION OF THE COURT
John R. Cannizzaro, J.
This is a motion brought by the defendant, Frank La Grua to (1) strike the above-entitled action from the calendar of this court, (2) directing and amending the complaint in this action to be reduced to the sum of $10,000 by reason of the decision of this court, dated April 23,1981, or in the alternative, (3) estopping the plaintiff from claiming an ad damnum clause in excess of $10,000 for failure to prosecute an appeal from the decision of this court, which adjudicated that this court cannot exceed its constitutional boundaries beyond the sum of $10,000.
The case at bar is an automobile negligence action noticed for trial in the Supreme Court, Kings County, and *775 having been denied a general preference as provided for in the Rules of the Appellate Division, Second Department, was transferred to the Civil Court of the City of New York, pursuant to CPLR 325 (subd [d]) on the 17th day of May, 1978 by orders of Honorable Charles R. Rubin, Justice of the Supreme Court.
This motion seeks relief in two phases. Phase one is to strike this action from the calendar and reduce the ad damnum clause to $10,000; and phase two in the alternative to estop the plaintiff from claiming an ad damnum clause in excess of $10,000 for failure to prosecute an appeal from the decision of this court.
The crux of this motion is based entirely on a decision of this court dated April 23,1981 rendered by Judge Norman H. Shilling. A perusal of that decision states:
“Defendants’ motion for an order staying all proceedings is granted for 30 days from the date hereof (CPLR 326a) pending defendants’ motion to the Supreme Court of the State of New York pursuant to CPLR Sec. 325(b) for an order remanding this case to that Court.
“Plaintiffs’ cross motion is denied in its entirety.”
That decision was followed by the court’s reasoning.
The 30-day period has expired and no motion has been made in the Supreme Court to remand this case. In addition, the decision of Judge Shilling has never been appealed to the Appellate Term of the Supreme Court and the time to appeal has expired.
Instead, defendant La Grua now moves this court for an order striking this action from the court’s calendar, and amending the ad damnum clause of the complaint to $10,000 or alternatively estopping the plaintiffs from claiming in excess of $10,000, based on the decision of Judge Shilling. For reasons unrelated to this proceeding, Judge Shilling is not a currently sitting Judge, and, consequently, this motion cannot be referred to him for disposition: As a result this case is now in limbo; left with a decision that this court lacks jurisdiction necessary to adjudicate cases under CPLR 325 (subd [d]) where the relief sought is in excess of $10,000.
*776 After reviewing the entire court file and all documents submitted on this motion this court finds that there is not even a scintilla of information indicating compliance with CPLR 1012 (subd [b]) or section 71 of the Executive Law, both of which deal with the issue of the constitutionality of a statute.
CPLR 1012 (subd [b]) states: “When the constitutionality of a statute of the state is involved in an action to which the state is not a party, the court shall notify the attorney-general, who shall be permitted to intervene in support of its constitutionality.”
Section 71 of the Executive Law states: “Whenever the constitutionality of a statute is brought into question upon the trial or hearing of any action or proceeding, civil or criminal, in any court of record of original or appellate jurisdiction, the court or justice before whom such action or proceeding is pending, may make an order, directing the party desiring to raise such question, to serve notice thereof on the attorney-general and that the attorney-general be permitted to appear at any such trial or hearing in support of the constitutionality of such statute. The court or justice before whom any such action or proceeding is pending may also make such order upon the application of any party thereto, and the court shall make such order in any such action or proceeding upon motion of the attorney-general. When such order has been made in any manner herein mentioned it shall be the duty of the attorney-general to appear in such action or proceeding in support of the constitutionality of such statute.”
While section 71 of the Executive Law appears discretionary, CPLR 1012 (subd [b]) is mandatory. It mandates that the court shall notify the Attorney-General. (Himmel v Chase Manhattan Bank, 47 Misc 2d 93.)
The court in the case of Seasons Realty Corp. v City of Yonkers (80 Misc 2d 601, 608) stated: “Inasmuch as the Attorney-General for the State of New York was not made a party to this action, this court — even if it deemed it necessary to do so — could not have passed upon the constitutionality of the State’s statute without giving the Attorney-General an opportunity to intervene in support of *777 the constitutionality of the statute. (CPLR 1012, subd. [b]; Executive Law, § 71.)” In that case, while the constitutionality issue was not involved, it touched upon that subject in its dictum.
In the case of Colenzo v Kernan (49 AD2d 809, 810) the court refused to consider the unconstitutionality issue “because he did not make the Attorney-General a party to the motion and present that argument at Special Term so that the issue could have been fully considered there (Matter of Jerry v Board of Educ. of City School Dist. of City of Syracuse, 44 AD2d 198, 202-203, mod on other grounds 35 NY2d 534; Executive Law, §71; CPLR 1012, subd [b]).” (See, also, Matter of Strongin v Nyquist, 54 AD2d 1031.)
Consequently, the failure of compliance with CPLR 1012 (subd [b]) and section 71 of the Executive Law the constitutionality of CPLR 325 (subd [d]) was not fully tested by inasmuch as it deprived the Attorney-General an opportunity to intervene in support of the constitutionality of that statute; therefore, the court’s decision of April 23, 1981 is a nullity and void.
While it is not the intent of this court to act as an appellate court, it would be remiss to the issue by not expressing its viewpoints relating to CPLR 325 (subd [d]) transfer.
The Civil Court of the City of New York is a constitutionally created court with its origin in article VI of the Constitution of the State of New York.
Its jurisdiction is set forth in article VI (§ 15, subd b) of the New York State Constitution “where the amount sought to be recovered or the value of the property does not exceed ten thousand dollars exclusive of interest and costs, or such smaller amount as may be fixed by law * * * and over such other actions and proceedings, not within the exclusive jurisdiction of the supreme court, as may be provided by law.”
Article VI (§ 19, subd a) of the State Constitution gives the' Supreme Court the right to transfer any action or proceeding, except over which it shall have exclusive jurisdiction which does not depend upon the monetary amount sought, to any other court having jurisdiction of the subject matter and classes of persons named as parties.
*778 Thus, the constitutional power is self-executing (Haas v Scholl, 68 Misc 2d 197; Kemper v Transamerica Ins. Co., 61 Misc 2d 7; 1 Weinstein-Korn-Miller, NY Civ Prac, par 325.04).
This section authorizes the transfer of an action notwithstanding absence of consent or presence of objection by any party thereto. (Frankel Assoc. v Dun & Bradstreet, 45 Misc 2d 607.)
Article VI (§ 19, subd j) states “Each court shall exercise jurisdiction over any action or proceeding transferred to it pursuant to this section.”
Article VI (§ 19, subd k) states “The legislature may provide that the verdict or judgment in actions and proceedings so transferred shall not be subject to the limitation of monetary jurisdiction of the court to which the actions and proceedings are transferred if that limitation be lower than that of the court in which the actions and proceedings were originated.”
In the absence of any other constitutional or statutory authority, the transferee court could exercise jurisdiction over a transferred action, only to the extent of its monetary limitation. If such were the prevailing construction of the Constitution and statutory law, the Supreme Court would have the power to deny the plaintiff the right to a trial by jury for that amount which exceeds the transferee court’s monetary jurisdiction. By such action the plaintiff would be denied his right to a trial by jury as conferred by section 2 of article I and section 18 of article VI and CPLR 4101.
The language in article VI (§ 19, subd k) is clear in its intent. It gives the Legislature the power to provide the answer to the problem that article VI (§ 19, subd a) does not address, to wit: the validity of a judgment rendered in excess of the monetary jurisdictional limit of the transferee court.
Consequently, the necessity of CPLR 325 (subd [d]), which reads as follows: “The appellate division, if it determines that the calendar conditions in a lower court so permit, may by rule provide that a court in which an action is pending may, in its discretion, remove such action without consent to such lower court where it appears that the *779 amount of damages sustained may be less than demanded, and the lower court would have had jurisdiction but for the amount of damages demanded. If the action is so removed, then the verdict or judgment shall be subject to the limitation of monetary jurisdiction of the court in which the action was originally commenced and shall be lawful to the extent of the amount demanded within such limitation. A waiver of jury trial in the first court is inoperative after the removal.”
It is inconceivable that the authors of the Constitution would be impractical by creating a lower court with a monetary jurisdiction of $10,000 as prescribed in article VI (§ 15, subd b) and with the same stroke of the pen authorize the Supreme Court without consent or objection by its self-executing grant of constitutional power (Frankel Assoc. v Dun & Bradstreet, supra) in article VI (§ 19, subd a) to transfer Supreme Court cases to lower courts and by article VI (§ 19, subd k) provide that as to those cases, so transferred, the monetary jurisdiction shall be the same as the Supreme Court or the ceiling of the complaint.
To conclude that article VI (§15, subd b) is the governing section and conflicts and nullifies article VI (§ 19, subd k) despite the explicit language and the clear intent of the framers of the Constitution renders it meaningless, and it must not be. (See Mount Sinai Hosp. v Davis, 18 Misc 2d 311, 312.)
The only logical conclusion intended is that article VI (§ 15, subd b) relates to those actions initiated and originating in the lower court and that section is not applicable to cases transferred to the lower court pursuant to section 19 of article VI.
The proper interpretation is that these sections implement each other rather than conflict.
The cases on the interpretation of the Constitution disclose that it must be given practical effect (Matter of Fay, 291 NY 198; Judd v Board of Educ., 278 NY 200); that where two interpretations are available and one is productive of invalidity and chaos and the other saves validity and avoids chaos, the latter interpretation will be adopted (Union Free School Dist. of Town of Rye v Town of Rye, 256 *780 App Div 456; 8 NY Jur, Constitutional Law, § 20, p 550); that a constitutional provision should receive a fair and liberal interpretation, not only according to the letter, but also according to the spirit and general purpose of the enactment (8 NY Jur, Constitutional Law, §21; People ex rel. McClelland v Roberts, 148 NY 360); that no one provision is to be separated from all the others or be considered alone. All provisions concerning a particular subject should be considered as a whole so as to effectuate the entire purpose of the Constitution (People ex rel. Williams Eng. & Contr. Co. v Metz, 193 NY 148); whatever is necessary to render effective any provision of a Constitution must be deemed implied and intended in the provision itself. (Matter of Fraser v Brown, 203 NY 136; see, also, Livoti v Fitzgerald, 255 App Div 711, amd 255 App Div 720; Matter of Newton v Lewis, 118 Misc 382, 389; Association for Protection of Adirondacks v MacDonald, 253 NY 234; Matter of Dowling, 219 NY 44; Koster v Coyne, 184 NY 494.)
The prevailing social and economic conditions cry out for legislative help to remedy congested calendars and case overloads and to expedite the dispensing of justice and concentrate in that area of our judicial system where most needed. Increased crime, shifting of social attitudes, and economic instability are some of the factors creating the existing unmanageable condition.
In the preceding two calendar years, approximately 1,000 Trial Judges have had to handle more than two million actions, proceedings and indictments (NYLJ, June 15,1981, p 1, col 3). The congestion has compelled the State to expend more money to train Judges in criminal law and procedure, who have been reassigned from Civil Court and Supreme Court to Criminal Terms (NYLJ, June 8, 1981, p 1, col 4). However, there is a limit to the amount of money this State can spend to alleviate court congestion. “ ‘[T]he most serious breakdown is its chronic underfunding in all elements of operation. The shortages of personnel, miserable facilities, and the crisis in correctional services need tio documentation beyond what is visible to the naked eye.’ ” (NYLJ, June 4, 1981, p 1, col 2.)
In the present atmosphere of fiscal austerity, new and innovative programs to alleviate this congestion problem *781 are unlikely to evolve in the near future. Indeed it has prompted Chief Judge Lawrence Cooke to warn of a “‘crisis of the courts with crime rates soaring across the nation and civil litigation rocketing to new highs, the conventional forum for dispute resolution, the court, has become a beleaguered institution. The quality of justice is endangered. With a tight economy in prospect for the eighties, the situation could deteriorate even further.’ ” (NYLJ, March 20, 1981, p 1, col 4; p 3, col 1.)
Several plans have been implemented to face the crisis. Governor Hugh Carey recently called on the Legislature to increase the number of authorized Judges which are needed to “‘meet the needs of our times’” and to “‘handle the increase in civil and criminal cases if we are to ensure that the courts of New York can carry out swift and certain justice.’” (NYLJ, June 2, 1981, p 1, col 2.) Last year a number of State Supreme Court Justices from upstate were transferred to metropolitan area counties in order to clear calendar backlog, and again this year 28 more up-State Justices were shifted to Westchester and Suffolk Counties to handle increased caseloads, including increased criminal indictments. (NYLJ, May 19,1981, p 1, col 2.)
Hence, it can be safely concluded that the elimination of calendar congestion and backlog is a public policy of this State. Implementation of this policy is authorized by section 19 of article VI of the Constitution of the State of New York, which provides for the orderly transfer of actions and proceedings from the Supreme Court to other courts having jurisdiction but for the amount demanded.
While undoubtedly some injustices and inequities may result from the present system of shifting cases from court to court, it is for the Legislature and for the people of this State to devise a new method of handling all civil and criminal matters throughout the State. Perhaps the implementation of a unified court system will be the answer to the inefficient and cumbersome court management of today. The need to transfer hundreds of cases from the Supreme Court to Civil Court is a blatant example of the need to unify and simplify the system. (See, e.g., Denner v Katz, 75 Misc 2d 51, mod 77 Misc 2d 53.) This is not the *782 first call to the Legislature and to the people of this State through a constitutional convention, to provide a uniform and efficient unified trial court system, and it certainly will not be the last.
Since the effective date of CPLR 325 (subd Ed]) (Feb. 1, 1973) and the rule promulgated under it (22 NYCRR 752.20) the Civil Court has disposed of thousands of cases transferred from the Supreme Court. While prolonged conduct is not entirely dispositive of the question of constitutional construction, it furnishes an indication of the proper construction and is entitled to weight (People v Tremaine, 226 App Div 331, 338; Matter of Koenig v Flynn, 258 NY 292; Matter of Becker, 179 App Div 789).
The Legislature has given article VI (§ 19, subd k) a particular construction, to give validity to the judgments and verdicts of the inferior courts to which the Supreme Court has transferred its case. In fact, the Legislature has interposed the language of article VI (§ 19, subd k) into CPLR 325 (subd [d]) almost verbatim. This construction is entitled to great weight (Broderick v Weinsier, 278 NY 419; Bareham v City of Rochester, 246 NY 140; People ex rel. Boyle v Cruise, 197 App Div 705).
This court is mindful of those cases, which, upon a cursory reading, seem to say that the jurisdiction of the transferee court is controlling upon a transfer down. However, they are distinguishable.
In Haas v Scholl (68 Misc 2d 197, supra) that case was decided in Westchester County, Supreme Court, at a time when implementing Rules of the Appellate Division for CPLR 325 (subd [d]) transfers in the First and Second Departments were not enacted. Such rules were in effect in the Third and Fourth Departments. The court was primarily concerned with equal protection of litigants in the First and Second Departments as opposed to those in the Third and Fourth Departments. The court took note of Professor McLaughlin’s observation of the prevailing situations, that it was “clear, therefore, that a court has the inherent constitutional power to transfer an action to a lower court, and that, until legislation is passed, the lower court may grant the plaintiff only the monetary damages within its jurisdiction.” (McLaughlin, Supplementary Practice Com *783 mentarles, CPLR 325, McKinney’s Cons Laws of NY, Book 7B, Pocket Part 1970-1971, CPLR 325 [c], p 269.)
In Weber v Kowalski (85 Misc 2d 349), that case was decided by the same Justice who decided Haas (supra), and therein he reaffirmed Haas, holding that the Supreme Court has self-implementing constitutional authority under article VI (§ 19, subd a) to transfer to an inferior court without consent, and the jurisdictional limits of the inferior court if the particular department or court lacked a rule permitting transfer down. Again, at that time implementing rules had not been enacted for the Ninth Judicial District in the Second Department, which embraces Westchester County.
Second Department rules providing for the transfer of cases from Supreme Court to the Civil Court under the authority granted by CPLR 325 (subd [d]) have been enacted in Kings County (22 NYCRR 752.20); in Richmond County (22 NYCRR 755.7) and in Queens County (22 NYCRR 795.14).
In Offner v Rothschild (87 Misc 2d 565) article VI (§ 19, subds a, k) of the New York State Constitution were read separately, and as a result subdivision a of section 19 alone was construed to provide constitutional authority to transfer cases down. Such a reading standing alone, does provide for such authority by its clear language, but such reading is too restrictive of the general purpose and intent of subdivision k of section 19. The two must be read together to give section 19 meaning for the reason herein-above set forth.
We must not remain blind to the changing conditions and needs of society, and in particular of those litigants who rightfully expect a swift and efficient system of judicial resolution. The Constitution of this State gives ample authority to the Legislature and to the various administrators of our courts to expand, modify and apply the resources of the unified court system to meet and satisfy those needs. This authority must not be hindered by narrow language contained elsewhere in the Constitution, which was intended for another time and another purpose. “The settlement of civil disputes in a satisfactory manner is a necessary part of the economic life of all civilized communities. *784 The procedure for the settlement of disputes can no more remain static than any other branch of the life of the community but must be adapted or altered from time to time to meet changing conditions.” (London Chamber of Commerce, Report on Expense of Litigation, 1930.)
Defendant’s motion is denied in all respects. This matter must be retained as a “325D Transfer” with the amount of recovery limited to that demanded in the complaint. This matter is set down for trial on October 13, 1981.